**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. 5:26-cv-01404-DOC-MAR Date: April 15, 2026

Title: Keyner Jose Morales v. U.S. Immigration and Customs Enforcement et al

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| | |
|---|---|
| Karlen Dubon | Not Present |
| Courtroom Clerk | Court Reporter |

| | |
|---|---|
| ATTORNEYS PRESENT FOR PLAINTIFF: None Present | ATTORNEYS PRESENT FOR DEFENDANT: None Present |

**PROCEEDINGS (IN CHAMBERS): ORDER GRANTING PRELIMINARY INJUNCTION**

On March 19, 2026, Petitioner Keyner Jose Morales ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."), challenging the lawfulness of his detention by U.S. Immigration and Customs Enforcement ("ICE"). Petition (Dkt. 1). On March 26, 2026 this "Court **ORDER[ED]** Respondents **TO SHOW CAUSE** as to why a preliminary injunction should not issue." Order Granting Temporary Restraining Order ("TRO") (Dkt. 7) at 8. The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7-15. For the reasons stated below, the Court **GRANTS** a Preliminary Injunction.

## I. Background

### A. Facts

Petitioner has since retained counsel and filed a declaration detailing his pertinent life events since arriving in the United States. *See* Declaration of Keyner Jose Morales ("Morales Decl.") (Dkt. 13). The Court recounts this updated factual history below.

Petitioner is a Nicaraguan national who arrived on the United States in September 2022. Morales Decl. ¶ 2. He immediately and voluntarily presented himself to

immigration authorities upon his arrival and identified himself as an asylum seeker. *Id.* He was granted humanitarian parole in November 2022 and released into the United States. *Id.*; *see* Reply (Dkt. 12) at 2. In 2023, Petitioner was once again determined not to pose a risk of flight or threat to the community and was granted an order of release on recognizance ("ROR"). Order of ROR (Dkt. 12-2). Petitioner is afraid of returning to Nicaragua because he has faced persecution there due to his political views. Morales Decl. ¶ 3.

Petitioner has work authorization inside the United States and has been consistently employed as a landscaper since obtaining authorization. *Id.*; Declaration of Joshua Daniel Newcomb ("Newcomb Decl.") (Dkt. 14) ¶ 5. Since arriving in the United States he has resided in California and lived near close friends and family. Morales Decl. ¶ 1. He has no criminal record. *Id.*

Petitioner was detained by ICE on January 17, 2026. *Id.* ¶ 3. He was working as a landscaper at a large apartment building when ICE officers pulled up next to him and detained him. *Id.* ¶¶ 3-5. He was cooperative throughout the entire arrest. *Id.* ¶ 6. Since, his arrest he has been detained at Adelanto. *Id.* ¶ 8.

**B. Procedural background**

On March 19, 2026, while proceeding pro se, Petitioner Keyner Jose Morales ("Petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."), challenging the lawfulness of his detention by U.S. Immigration and Customs Enforcement ("ICE"). Petition (Dkt. 1). On the same day, Petitioner filed an Ex Parte Application for a Temporary Restraining Order, also while proceeding pro se, requesting a bond hearing ("Application" or "App.") (Dkts. 2, 3). The Court granted the Application on March 26, 2026 and imposed a temporary restraining order ordering that Petitioner be given a bond hearing (Dkt. 7). The Court also appointed the Office of the Federal Public Defender to represent Petitioner (Dkt. 7). The Court also ordered the Parties to brief whether a preliminary injunction should be put in place.

On March 30, 2026, Petitioner was given a bond hearing before an immigration judge. Order of the Immigration Judge (Dkt. 9-1). At this hearing, the immigration judge denied Petitioner bond because it found that Petitioner posed a flight risk. *Id.*

Respondents filed a response to the order to show cause whether a preliminary injunction should issue on April 2, 2026 (Dkt. 9). Petitioner filed his Reply (Dkt. 12) to the order to show cause on April 9, 2026. He also attached two declarations more fully fleshing out his personal and immigration history (Dkts. 13, 14). After reviewing Petitioner's Reply, the Court concluded that it raised new arguments potentially justifying Petitioner's immediate release and, because of the new arguments raised, granted Respondents permission to file a Sur-Reply (Dkt. 15). Respondents filed their Sur-Reply (Dkt. 16) on April 13, 2026.

## II. Legal Standard

For the Court to grant an application for a TRO, the moving party must show: (1) they are "likely to succeed on the merits" of the underlying claim; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in his favor;" and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. See *Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

## III. Discussion

As detailed above, Petitioner raises new arguments in his Reply to the order to show cause that may justify immediate release (Dkt. 12). When initially filing his Application and Petition, Petitioner was proceeding pro se and thus it is not surprising that he missed meritorious arguments. As detailed in the TRO, Petitioner has shown irreparable injury because of his detention and he is entitled to make all meritorious arguments available to him. Furthermore, Respondents have been given an opportunity to respond to these new arguments and have filed a Sur-Reply (Dkt. 16). According, the Court concludes that it is appropriate to consider Petitioner's new arguments.

In their Sur-Reply, Respondents chiefly argue that it would be inappropriate for this Court to overrule the immigration judge's bond ruling. *See generally* Sur-Reply. Here, the Court grants Petitioner release because of his unlawful re-detention. As such, the Court does not reach the government's arguments regarding the immigration judge's bond ruling.

**A. Likelihood Of Success On The Merits.**

Petitioner argues that his detention is unlawful because he has been re-detained after being released on humanitarian parole and that his detention despite this release violates a protected liberty interest. *See generally* Reply.

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law. U.S. Const. amend. V. Due process rights extend to noncitizens present in the United States, including those without lawful status *Zadyvadas v. Davis*, 533 U.S. 678, 693-94 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." (cleaned up)). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Here, Petitioner was initially detained and released under section 212(d)(5) of the Immigration and Nationality Act, or 8 U.S.C. § 1182(d)(5) and released on humanitarian parole.

Section 1182(d)(5)(A) provides that a "noncitizen may nonetheless be, in the discretion of the Secretary of Homeland Security, 'parole[d] into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit[.]'" *J.U. v. Maldonado*, 2025 WL 2772765, *5 (E.D.N.Y. 2025) (quoting 8 U.S.C. § 1182(d)(5)(A)). Specifically, § 1182(d)(5)(A) provides:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the

> custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Furthermore, a noncitizen may only be released pursuant to § 1182(d)(5)(A) "provided the [noncitizen] present[s] neither a security risk nor risk of absconding." *Fernández López v. Wofford*, 2025 WL 2959319, *2 (E.D. Cal. 2025) (quoting 8 C.F.R. § 212.5(b)). Release under this provision therefore "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Id.*

DHS may terminate humanitarian parole when, in the opinion of the DHS Secretary, "the purposes of such parole . . . have been served," and upon termination "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission[.]" 8 U.S.C. § 1182(d)(5)(A). Critically, however, the implementing regulation requires that "DHS must provide 'written notice to the [noncitizen]'" prior to revocation of parole. *Mata Velasquez v. Kurzdorfer*, 2025 WL 1953796, *5 (W.D.N.Y. 2025) (quoting 8 C.F.R. § 212.5(e)(2)(i)). This written notification must also be sufficiently detailed: "[B]oth common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole must attend to the reasons an individual [noncitizen] received parole." *Mata Velasquez*, 2025 WL 1953796, at *5 (cleaned up); *Y-Z-L-H v. Bostock*, 792 F.Supp.3d 1123, 1146 (D. Or. 2025) (finding that the government's "mass distribution, standard-form email" purporting to revoke petitioner's § 1182(d)(5)(A) parole provided insufficient written notice because it lacked individualized reasons for the revocation).

Courts have identified various ways that a petitioner may be granted some form of parole. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.*

Courts consistently apply the same procedural due process analysis to petitioners under both forms of parole. The Court in *Pinchi v. Noem* explained the due process rights owed to parolees in a well-reasoned decision:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). . . . As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [Petitioner's] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey*, 408 U.S. at 482, 92 S.Ct. 2593. The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. [Petitioner] justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships.

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025).

For the same reasons, Petitioner here possessed a protected liberty interest when he was released on humanitarian parole. *See, e.g.*, *Fernández López v. Wofford*, 2025 WL 2959319, *4-5 (E.D. Cal. 2025) (finding that petitioner released from immigration detention on parole had protected liberty interest in remaining out of custody regardless of whether she was paroled under § 1182(d)(5)(A) or § 1226(a)); *Noori v. Larose*, 2025 WL 2800149, *4, 9-10 (S.D. Cal. 2025) (finding that petitioner who was paroled from immigration detention under § 1182(d)(5)(A) had protected liberty interest in remaining out of custody).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL



Because Petitioner has a protected liberty interest, the Court turns to the next step. To determine constitutionally sufficient procedures to protect a liberty interest, courts apply the *Mathews* test. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). This test requires courts to balance three factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.*

Turning to the first factor, Petitioner had a significant liberty interest in remaining out of custody, given the Government's promise through its grant of parole. *See Zadvydas*, 533 U.S. at 690. A liberty interest, such as Petitioner's, is paramount and should be protected. *See Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty." (cleaned up)).

Under the second factor, the risk of erroneous deprivation is high. The government revoked Petitioner's parole without any opportunity for pre-detention review and opportunity to be heard. The government earlier found Petitioner to be suitable for parole and that he is not a flight risk or danger to the community. Thus, the government's implicit reversal of this determination without any opportunity for pre-detention review makes the opportunity for erroneous deprivation extremely high.

Third, the government's interest in detaining Petitioner without notice, reasoning, and a hearing is low. The government has the capability to hold such a hearing and provide the requisite notice. Forcing the government to comply with proper procedures imposes a very low burden. *See Pinchi*, 792 F. Supp. 3d at 1038-39; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Accordingly, the Court joins numerous of its sister courts in finding that Petitioner's detention is unlawful because when the Government re-detained him, it revoked his release in violation of the Due Process Clause. *See e.g.*, *Gergawi v. Larose*, No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *4 (S.D. Cal. Dec. 23, 2025); *Pinchi*, 792 F.Supp.3d at 1038; *Sanchez v. LaRose*, No. 25-CV-2396-JES-MMP,

2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) .

**B. Irreparable Injury**

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). Indeed, "unlawful detention certainly constitutes extreme or very serious' damage, and that damage is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Petitioner has shown evidence that he has been deprived of due process regarding his detention, so this factor tilts in his favor.

**C. Balance of Equities and Public Interest**

"A plaintiff's likelihood of success on the merits of a constitutional claim also tips the merged third and fourth factors decisively in his favor." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023); *see California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) ("When the government is a party, the last two factors merge."). And "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Cal. Chamber of Commerce v. Council for Educ. and Research on Toxics*, 29 F.4th 468, 482 (9th Cir. 2022) (cleaned up). Indeed, "public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005); *Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1120 (9th Cir. 2023) (explaining that when a party shows a likelihood of success on the merits of a constitutional claim, "the remaining *Winter* factors favor enjoining the likely unconstitutional law").

Here, Petitioner has demonstrated a likelihood of success on the merits so the third and fourth factors also tilt in his favor.

**D. Bond Requirement**

Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL



proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (quotation modified). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

## IV. Disposition

For the above reasons, the Court **GRANTS** Petitioner a preliminary injunction. Respondents are **ORDERED** to release Petitioner from custody immediately under no more stringent conditions of release than the original release on humanitarian parole. Furthermore, Respondents are **ENJOINED** from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this detention.

Petitioner may proceed on his underlying Petition before Magistrate Judge Margo A. Rocconi.

The clerk shall serve this minute order on the parties.